CTJ-0

ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED
2022 DEC 16 PM 4:01
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

BILLY MARCUM, JR. (01)

No. 4-22CR-380-O

# INFORMATION

The United States Attorney Charges:

## Introduction

1. Since on or before December 13, 2000, Defendant **Billy Marcum, Jr.**, was the owner of the The Caslin Group LTD. Starting in or before January 2018, and continuing until in or about May 2022, **Marcum** was a co-owner of Navarro Production Company, LLC ("Navarro"), Navarro Minerals, LLC, Caddo I, LLC, Bluecreek Operating, Fullspike Energy, Viejo Services, LLC, and Viejo Exploration (collectively, the companies). **Marcum**, who had been in the oil and gas industry for over 30 years, managed the companies and controlled their bank accounts.

2. The purpose of the companies was to acquire oil and gas leases, pay for oil well repair and rework, and ultimately produce and sell oil and gas from the purchased leases. Once a lease was acquired, **Marcum** was to refurbish the lease, increase or restore oil and gas production, and earn revenue through oil and gas sales. The companies, however, required investor funds to purchase the oil and gas leases, fund operational expenses, and pay for oil well repairs and rework. The investor returns were to be paid with the profits from the oil and gas sales.

3. Starting in or before January 2018, **Marcum** presented oil and gas lease investment opportunities to investors and regularly solicited investors for funds to purchase oil and gas leases and to pay for operational expenses directly related to those leases.

4. **Marcum's** responsibilities to the investors included managing incoming investment funds, dispersing investment returns, paying lease-related bills, and providing to investors run statements, which are essentially receipts from oil or gas purchasers that note the gross volume of product taken, sales value, taxes paid, dates, lease name and number, and net amounts to be paid to the operator.

5. **Marcum** opened and maintained a number of business and personal bank accounts during his tenure in the oil and gas industry, including The Caslin Group LTD First Financial Bank account ending in 7278 (FFB-7278) and the Viejo Services, LLC First Financial Bank account ending in 7902 (FFB-7902), among others. Additionally, on or about January 21, 2020, **Marcum** opened the Navarro Frost Bank account ending in 2298 (FB-2298) and the Viejo Exploration First Financial Bank account ending in 7034 (FFB-7034), on or about May 27, 2020.

## Scheme to Defraud

6. Beginning in or before January 2018, and continuing until on or about May 3, 2022, **Marcum** devised and executed a scheme to defraud investors, and to obtain money and property by means of materially false representations, pretenses, and promises. As part of the scheme to defraud, **Marcum** represented to investors that their money would be used to purchase oil and gas leases and to pay for production-related expenses.

**Marcum**, however, failed to purchase many of the oil and gas leases that were marketed to the investors. Instead, **Marcum** used investor funds to pay investor returns, representing that those funds were from oil and gas sales when, in fact, they were not. **Marcum** fraudulently made and/or directed these payments to investors to lull them into believing their investments were sound and to induce them to continue to invest in his projects. In addition to using investor funds to pay bogus investment returns, **Marcum** used investor funds to pay attorney fees unrelated to the investments, unrelated operational expenses, and personal expenditures.

7. As part of the scheme to defraud, **Marcum** emailed investors periodic reports containing materially false statements regarding oil production and oil sales data for the leases. By providing investors with oil production and sales data for wells he never purchased as well as by significantly overstating oil production and sales data on the few leases his companies did own, **Marcum** deceived investors into believing that his investment projects were successful.

8. To further the scheme to defraud and to avoid detection, **Marcum** disguised the true oil sales by emailing false run statements purported to be for the investment leases. These false run statements purported to show oil sales for the companies' leases, noting the gross volume of product taken, sales value, taxes paid, dates, lease name and number, and net amount to be paid to the operator. By providing false run statements to investors, **Marcum** deceived investors into believing that his investment projects were successful.

9. Beginning in or about September 2018, **Marcum** did not have sufficient oil and gas revenues and could no longer raise sufficient investor funds to pay existing investors.

In or about that time, **Marcum** and J.T., the president and co-owner of the Prosperitas Group, LLC, entered an agreement for J.T. to solicit investor funds for Viejo Services, LLC and Viejo Exploration. **Marcum** knowingly supplied false information for J.T. to use to mislead Viejo investors. Misrepresentations J.T. made to Viejo investors included (a) statements related to the productivity of the oil leases that the Viejo companies proposed as investments; (b) that the return on investment would be paid from oil and gas sales revenue, (c) that J.T. would receive his commission from oil sales profits, and (d) that **Marcum** and J.T. would not receive any compensation from the lease acquisitions until the investors fully recouped their investments.

10. From in or about September 2018, through on or about May 3, 2022, all of the investor money that J.T. solicited from Viejo investors was deposited directly into Viejo bank accounts FFB-7902 or FFB-7034, which were controlled by **Marcum**, not by J.T. After receiving the Viejo investor deposits, **Marcum** paid J.T. a portion of the investor funds that J.T. had successfully solicited. **Marcum** then disbursed the majority of the remaining funds to other investors, including Navarro investors, misrepresenting that the payments were from oil sales.

11. On September 16, 2020, **Marcum** emailed five Navarro investors to inform them that, collectively, they would receive $148,046.12 for July 2020, oil sales and to solicit an additional $160,000 for another project. Between September 17, 2020, and September 30, 2020, the investors sent **Marcum** a total of $160,000, which was deposited into FB-2298. **Marcum** then paid the investors approximately $148,046.12 in purported oil sales using their own money.

12. On December 31, 2020, **Marcum** emailed the Navarro investors, falsely informing them of $261,000 in oil sales revenue for November 2020. On or about January 25, 2021, **Marcum** paid Navarro investors purported returns from oil revenue totaling $188,609.40 from account FB-2298. Of the $188,609.40 paid to investors, however, approximately $139,330 were funds that investor J.H. had wired to **Marcum** for investment in another project.

13. On or about August 8, 2020, **Marcum** sent an email from bluecreek75@yahoo.com to Navarro investor C.C. in Fort Worth, Texas, in which **Marcum** knowingly provided two falsified run statements for June leases unrelated to C.C. and Navarro investors. **Marcum** falsified the names of the leases on the run statements to reflect the names of leases he purportedly invested in on behalf of Navarro investors.

14. **Marcum** knew that certain Navarro leases had no oil sales for June 2020. By providing false run statements for those leases, **Marcum** misrepresented the profitability of those leases to induce additional investment in the scheme.

15. Between in or about April 19, 2022, and May 3, 2022, J.T. successfully solicited $256,000 in investment funds and instructed the investors to mail their investment documents to **Marcum**, who used the money to make lulling payments to certain investors and to pay J.T.'s commission from investment funds.

16. During and in connection with the scheme, **Marcum** defrauded more than 120 investors of over $25,000,000 with a total loss of more than $13,000,000.

Count One
Wire Fraud
(Violation 18 U.S.C. § 1343)

17. The United States Attorney realleges the allegations set forth in the Introduction and the Scheme to Defraud paragraphs of this Information.

18. On or about August 8, 2020, in the Northern District of Texas, and elsewhere, Defendant **Billy Marcum, Jr.**, for the purpose of executing and attempting to execute the scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and pictures, in that, using the internet, **Marcum** sent, or caused to be sent, an email to C.C. in Fort Worth, Texas, via **Marcum's** Yahoo email account, routed through Yahoo servers located outside of Texas, in which **Marcum** provided fraudulent oil sales information, which he knew to be materially false.

In violation of 18 U.S.C. § 1343.

Forfeiture Notice
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

19. The allegations contained in the Introduction and the Scheme to Defraud paragraphs and in Count One of this Information are realleged and incorporated by reference for the purpose of alleging forfeiture. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the violation of 18 U.S.C § 1343 alleged in Count One, Defendant **Billy Marcum, Jr.**, shall forfeit to the United States of America the property listed below, which constitutes or is derived from proceeds traceable to the violation:

a. The full liquidated value of Frost Bank account ending in 2298 in the name of Navarro Production, restricted pursuant to warrant on or about April 18, 2022, in the amount of $5,251.87.
b. The full liquidated value of First Financial Bank account ending in 7902 in the name of **Billy W. Marcum Jr.**, Sole Member Viejo Services LLC, restricted pursuant to warrant on or about May 4, 2022, in the amount of $152,915.02.
c. The full liquidated value of First Financial Bank account ending in 7034 in the name of **Billy W. Marcum Jr.** DBA Viejo Exploration, restricted pursuant to warrant on or about May 4, 2022, in the amount of $300,612.38.
d. The full liquidated value of First Financial Bank account ending in 7278 in the name of B.M. and **Billy Marcum Jr.**, DBA The Caslin Group LTD, restricted pursuant to warrant on or about May 4, 2022, in the amount of $234,078.08.

LEIGHA SIMONTON
UNITED STATES ATTORNEY

NANCY E. LARSON
Assistant United States Attorney
DC State Bar No. 430780
801 Cherry Street, Suite 1700
Fort Worth, Texas, 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455
Email: nancy.larson@usdoj.gov